UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RAMESH "SUNNY" BALWANI,<br><br>    Petitioner,<br><br>-against-<br><br>ROGER PARLOFF and FORTUNE MEDIA (USA) CORPORATION,<br><br>    Respondents. | Case No. _____<br><br>Associated Case: 5:18-cv-01603-EJD<br>(Northern District of California)<br><br>**PETITION TO COMPEL COMPLIANCE WITH A SUBPOENA PURSUANT TO FED. R. CIV. P. 45** |

William J. Foley
Orrick, Herrington & Sutcliffe LLP
51 West 52nd Street
New York, NY 10019
212 506 5000
wfoley@orrick.com

Jeffrey B. Coopersmith (*pro hac vice forthcoming*)
Orrick, Herrington & Sutcliffe LLP
701 Fifth Avenue, Suite 5600
Seattle, WA  98104-7097
206 839 4300
jcoopersmith@orrick.com

Randall S. Luskey (*pro hac vice forthcoming*)
Orrick, Herrington & Sutcliffe LLP
405 Howard Street
San Francisco, CA 94105-2669
415 773 5700
rluskey@orrick.com

*Attorneys for Ramesh "Sunny" Balwani*

**TABLE OF CONTENTS**

Page

I.  BACKGROUND ........................................................................................................... 1

    A.  The Nature of the Action Pending in the Northern District of California. ............ 1

    B.  The Discovery Dispute. ........................................................................................ 3

    C.  Mr. Balwani's Efforts to Meet and Confer. .......................................................... 5

II.  ARGUMENT ................................................................................................................ 6

    A.  The Information Requested In The Subpoena Is Relevant, Material, And Proportional To The Needs Of The Case. ............................................................. 7

    B.  By Refusing to Provide a Privilege Log, Mr. Parloff and Fortune Have Waived Any Privilege They Had. ......................................................................... 8

III.  CONCLUSION ........................................................................................................... 12

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                                          **Page(s)**

*Am. Sav. Bank, FSB v. UBS Painewebber, Inc.*,
  No. M8-85, 2002 WL 31833223 (S.D.N.Y. Dec. 16, 2002) ................................................... 10

*In re Application of Chevron Corp.*,
  709 F. Supp. 2d 283 (S.D.N.Y. 2010), *aff'd sub nom. Chevron Corp. v.
  Berlinger*, 629 F.3d 297 (2d Cir. 2011) ................................................................................... 10

*In re Application of Chevron Corp.*,
  736 F. Supp. 2d 773 (S.D.N.Y. 2010) .......................................................................... 8, 10, 12

*In re Grand Jury Subpoena*,
  274 F.3d 563 (1st Cir. 2001) ................................................................................................... 10

*Horace Mann Ins. Co. v. Nationwide Mut. Ins. Co.*,
  240 F.R.D. 44 (D. Conn. 2007) ............................................................................................ 9, 12

*Jalayer v. Stigliano*,
  No. CV 10-2285 (LDH) (AKT), 2016 WL 5477600 (E.D.N.Y. Sept. 29, 2016) ...................... 7

*Mosely v. City of Chicago*,
  252 F.R.D. 421 (N.D. Ill. 2008), *order vacated in part on reconsideration sub
  nom. on other grounds Mosley v. City of Chicago*, 252 F.R.D. 445 (N.D. Ill.
  2008) ................................................................................................................................. 11, 12

*OneBeacon Ins. Co. v. Forman Int'l, Ltd.*,
  No. 04 CIV. 2271 (RWS), 2006 WL 3771010 (S.D.N.Y. Dec. 15, 2006) ........................... 9, 10

*Schoolcraft v. City of New York*,
  10 CIV. 6005 RWS, 2014 WL 1621480 (S.D.N.Y. Apr. 22, 2014) .......................................... 5

**Rules**

Fed. R. Civ. P.
   Rule 45 ........................................................................................................................... *passim*
   Rule 45(d)(2)(B)(i) & (f) ........................................................................................................... 1
   Rule 45(e)(2)(A) ........................................................................................................................ 5
   Rule 45(e)(2)(A)(ii) ............................................................................................................... 6, 8
   Rule 45(d)(2)(B)(i) ..................................................................................................................... 1

Civ. L.R.
   Rule 26.2 ......................................................................................................................... 8, 9, 10
   Rule 26.2(a) ............................................................................................................................... 8

9A Fed. Prac. & Proc. Civ. § 2464 (3d ed.) ..................................................................................... 9

Ramesh "Sunny" Balwani ("Mr. Balwani") moves this Court for an Order compelling compliance with subpoenas duly issued and served on Roger Parloff and Fortune Media (USA) Corporation ("Fortune") pursuant to Rule 45(d)(2)(B)(i) of the Federal Rules of Civil Procedure.

Though this case is pending in the Northern District of California, the subpoena requires production in the Southern District of New York. Mr. Balwani must therefore move for an order of compliance in the Southern District—"the court for the district where compliance is required"—unless "the person subject to the subpoena consents" to transfer the matter to the district where the subpoena was issued. Fed. R. Civ. P. 45(d)(2)(B)(i) & (f). Neither Mr. Parloff nor Fortune consented to a transfer. *See* Declaration of Jeff Coopersmith, ("Coopersmith Decl.") ¶ 2.

I.  **BACKGROUND**

   A.  **The Nature of the Action Pending in the Northern District of California.**

From 2009 to 2016, Mr. Balwani served as President and Chief Operating Officer of Theranos, Inc., a diagnostics startup operating out of Palo Alto, California. On March 3, 2018, the Securities and Exchange Commission ("SEC") filed a Complaint in the Northern District of California, charging Mr. Balwani with securities fraud. Coopersmith Decl. ¶ 8, Ex. A (Complaint).  The Complaint alleges that, during his time at Theranos, Mr. Balwani misled investors about various aspects of Theranos's business. *Id.*

One of the Complaint's key allegations is that investors were misled by media articles about Theranos, which the SEC attributes, in part, to Mr. Balwani. Coopersmith Decl. ¶ 8, Ex. A (Complaint) ¶¶ 37-42. Roger Parloff—a reporter for *Fortune* Magazine at the time—was the principal alleged case.

In 2014, Mr. Parloff published a *Fortune* cover story favorably profiling Theranos. Coopersmith Decl. ¶ 9, Ex. B (2014 Article). *Id*. Sixteen months later, he read a *Wall Street*

*Journal* article critical of the company. The article attacked the capabilities of Theranos technology, calling into question the accuracy of some of the claims Mr. Parloff had made in his 2014 Article. Mr. Parloff reacted by going on the offensive. In 2015, he published a second article—what he called a "protracted correction"— accusing Theranos of intentionally misleading him. Coopersmith Decl. ¶ 10, Ex. C (2015 Article).

In May 2018, Mr. Parloff participated in an interview conducted jointly by the SEC and the U.S. Department of Justice. The interview delved into the research Mr. Parloff conducted while writing his articles, including his four-day trip to California to visit Theranos in 2014, the tour he took of the facility, his conversations with Mr. Balwani and the company's CEO, interviews he conducted with more than a dozen individuals connected to Theranos, and other topics related to his work. Coopersmith Decl. ¶ 3. During the interview, Mr. Parloff expressed that his experience publishing the articles "has been painful" because he felt he had "drunk the Theranos Kool-aid." *Id.*

Throughout the interview, Mr. Parloff refers to notes he kept and interviews he recorded during his research.[1] *Id.* He also gave the government a document he created in April 2018, which appears to be a "roadmap" of the portions of the materials Mr. Parloff believes are the most inculpatory. Coopersmith Decl. ¶ 3. Mr. Parloff's roadmap features, among other things, a section outlining an interview he did with Mr. Balwani. *Id.* He could have refused to provide materials and information to the government based on the journalist's privilege, but he did not— shifting roles, at least during this period, from a news-gatherer to a critical cooperating witness.

Earlier this year, Mr. Parloff returned to the public eye when he voluntarily appeared in

---

[1] Mr. Parloff gave at least some of these materials to the government, and the government has given at least some of them to Mr. Balwani, though Mr. Balwani does not know which, if any, materials have been withheld from him. Coopersmith Decl. ¶ 3.

"The Inventor: Out for Blood in Silicon Valley"—an HBO takedown-documentary aimed at Theranos. HBO marketed the film as a story of "the rise a fall of Theranos" and touted its "extraordinary access to … [the] testimony from key insiders."[2] Mr. Parloff used the opportunity to express his personal anger about Theranos. In one portion of the film, he describes his reaction to reading the *Wall Street Journal* article:

> I tried to speak to [Theranos's CEO] and was told that she was going to be unavailable all day. … I was thinking in my mind, … [y]ou need to get out here and go through this article paragraph by paragraph explaining what the f[] is going on at your company.

*The Inventor: Out for Blood in Silicon Valley* (HBO television broadcast Mar. 18, 2019 (emphasis added)).

The SEC has now made Mr. Parloff a central witness in its case against Mr. Balwani, going so far as to reproduce quotations of his 2014 Article in the Complaint to support its theory that Mr. Balwani and others at Theranos lied about the company's diagnostic capabilities, and then used those lies to later mislead investors. Coopersmith Decl. ¶ 8, Ex. A (Complaint) ¶¶ 40-42, 57.

### B. The Discovery Dispute.

On September 23, 2019, Mr. Balwani served subpoenas on Mr. Parloff and Fortune pursuant to Federal Rule of Civil Procedure 45. The Parloff subpoena requested five categories of material, obtained or created between January 2014 and the present, relating specifically to Theranos:

i.   Any draft article referring or relating to Theranos;

ii.  Any communications discussing Theranos;

---

[2] https://www.hbo.com/documentaries/the-inventor-out-for-blood-in-silicon-valley/about.

    iii.    Any notes or recordings of any conversation or interview referring or relating to Theranos;

    iv.    Any documents collected or reviewed in researching or drafting any article referring or relating to Theranos; and

    v.    All communications with the government relating to Theranos.

The Fortune subpoena requested four categories of similar material, obtained or created between January 2014 and the last day of Mr. Parloff's employment at *Fortune* magazine:

    i.    Any draft article by Roger Parloff referring or relating to Theranos;

    ii.    Any communications to, from, or regarding Roger Parloff referring or relating to Theranos;

    iii.    Any notes or recordings of any conversation or interview conducted by Roger Parloff, or at his direction, referring or relating to Theranos; and

    iv.    Any documents collected or reviewed in researching or drafting any article by Roger Parloff referring or relating to Theranos.

*See* Coopersmith Decl. ¶¶ 11-12, Exs. D & E (Parloff Subpoena & Fortune Subpoena). Both subpoenas set October 14, 2019, as the deadline for production. *Id.*

On October 15, Mr. Parloff and Fortune filed objections to the subpoena. Coopersmith Decl. ¶ 13, Ex. F (Objections). They issued a blanket claim that *all* the materials in each subpoena category—including any that may have been obtained or created *after* Mr. Parloff published his Theranos articles—qualified as "unpublished editorial and reportorial work-product" and "therefore, are protected by the reporter's privilege." *Id.* at 1-2, 6-7. They also objected to providing a "privilege log"—a table listing, in abbreviated form, the responsive documents to which they claimed the privilege applied—on the ground that any such log would

*itself* be protected by privilege. *Id.* at 3-4. Producing such a log *in any form*, they claimed, would "entail the disclosure of information about sources and reporting that the Privilege is precisely designed to protect." *Id.* at 4.

As with their objection to providing the documents themselves, Mr. Parloff and Fortune's objection to the privilege log did not discriminate between the categories of documents requested in the subpoena or the date at which they were obtained or produced—even when that date was long after Mr. Parloff published his final article on Theranos in 2015. No log could be produced for anything, they claimed, for the same reason. *Id.* at 3-4.

### C. Mr. Balwani's Efforts to Meet and Confer.

Mr. Balwani's counsel and counsel for Mr. Parloff and Fortune met and conferred on multiple occasions over several weeks to try to reach an agreement about the subpoenaed materials. On October 21, Mr. Balwani's counsel sent Mr. Parloff's counsel an email requesting legal support for his position that no privilege log was required in any form, and that failing to provide one would not amount to a waiver of the privilege. Coopersmith Decl. ¶ 4. In an email response, Mr. Parloff's counsel cited *Schoolcraft v. City of New York*, 10 CIV. 6005 RWS, 2014 WL 1621480 (S.D.N.Y. Apr. 22, 2014)—a case about a wholly different question of privilege law that, if anything, supports Mr. Balwani's claim that he is entitled to a privilege log.[3]

---

[3] Contrary to the suggestion of Mr. Parloff's counsel, *Schoolcraft* confirmed that "Rule 45(e)(2)(A) *does* require nonparties to provide a privilege log," and that a journalist, "in the same manner as any other litigant," must "provid[e] a privilege log enumerating the documents as to which privilege is claimed and includ[e] as to each such information as may be necessary to make out his claim of qualified journalist privilege." 2014 WL 1621480 at *4-5 (emphasis added) (quoting *In re Application of Chevron Corp.*, 736 F. Supp. 2d 773, 782 (S.D.N.Y.2010)). The question in *Schoolcraft* was simply whether a complete waiver of the privilege was appropriate when the subpoena placed a "heavy burden" on the journalist by demanding that he "immediately prepare" a privilege log. But that question is irrelevant here. Mr. Balwani's subpoena calls for a relatively narrow universe of documents. But even if that were not true, it would not matter: Mr. Balwani's counsel has repeatedly told Mr. Parloff's counsel that Mr. Balwani will happily extend the

The parties conferred by phone on October 23, and again, multiple times, on October 30. They also exchanged emails on October 31. *Id.* ¶ 5. During these discussions, Mr. Parloff's counsel stated that he was willing to provide only those materials Mr. Parloff and Fortune had provided to the government, as well as any emails they had exchanged about the interview. He refused to provide any other materials—including those that were obtained or produced *after* Mr. Parloff and Fortune published their final article about Theranos in 2015—claiming that all were categorically covered by the journalist's privilege. *Id.*

Mr. Parloff's counsel also refused to provide a log listing the documents in any fashion, claiming, as he had in his formal objections, that the log itself would violate the privilege. *Id.* Mr. Balwani's counsel expressed—multiple times, and at great length—that Mr. Balwani would not object if Mr. Parloff and Fortune redacted any portions of the log that might realistically reveal the identities of confidential sources, or information that was, for some other reason, too sensitive to disclose. But Mr. Parloff's counsel claimed that even a redacted log was not an option. *Id.*

As of this filing, Mr. Parloff and Fortune have not provided any documents. They also have failed to produce any form of log of the materials they have withheld. *Id.* ¶ 7.

**II.     ARGUMENT**

Federal Rule of Civil Procedure 45(e)(2)(A)(ii) provides that "[a] person withholding subpoenaed information under a claim that it is privileged … must … describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Yet that is precisely what Mr. Parloff and Fortune have refused to do.

---

subpoena's deadline as long as reasonably necessary to produce the required log. Coopersmith Decl. ¶ 6.

### A. The Information Requested In The Subpoena Is Relevant, Material, And Proportional To The Needs Of The Case.

"[T]he party issuing [a] subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Jalayer v. Stigliano*, No. CV 10-2285 (LDH) (AKT), 2016 WL 5477600, at *2 (E.D.N.Y. Sept. 29, 2016) (quotation marks omitted). Rule 45 subpoenas are subject to the boundaries of Rule 26, which recognizes that "information is discoverable ... if it is relevant to any party's claim or defense and is proportional to the needs of the case." *Id*. (quoting the Rule 26 Advisory Committee Notes to 2015 Amendments).

The materials Mr. Balwani seeks are clearly relevant to both the SEC's case and Mr. Balwani's defense. The SEC made sure of that. Not only did it include quotations from Mr. Parloff's 2014 article multiple times in the Complaint, but it went on to claim that the statements Theranos's allegedly made to Mr. Parloff—statements he later made in his article—"gave potential investors the impression that Theranos was only using its own [proprietary machines] for patient testing," which was, the SEC claims, "false or misleading." Coopersmith Decl. ¶ 8, Ex. A (Complaint) ¶¶ 40-42, 57-59.

Mr. Parloff and Fortune would limit Mr. Balwani's ability to obtain discovery about these central allegations in the SEC Complaint to the small set of documents and other materials he chose to provide to the government—materials he had good reason to cherry pick, given the public position he took in his 2015 article, underscored in his later, highly emotional documentary appearance, that he had been "fooled by … Theranos." Coopersmith Decl. ¶ 3. As discussed below, this is inconsistent with the law and unjustified under the circumstances of this case.

### B. By Refusing to Provide a Privilege Log, Mr. Parloff and Fortune Have Waived Any Privilege They Had.

Mr. Parloff and Fortune apparently believe that they should be allowed to unilaterally decide which of the materials in their possession are privileged. But, for good reason, "[t]he person claiming a privilege … cannot decide the limits of [his] own entitlement." Fed. R. Civ. P. 45, Advisory Committee Notes to 1991 Amendments. Rule 45 provides that "[a] person withholding subpoenaed information under a claim that it is privileged … *must* … describe the nature of the withheld documents … in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed. R. Civ. P. 45(e)(2)(A)(ii) (emphasis added). In other words, a subpoenaed individual may object to providing documents on the ground of privilege, but if he does, he must produce a log of withheld documents to support his claim.

The Southern District of New York requires the same procedure:

> [W]here a claim of privilege is asserted in objecting to any means of discovery or disclosure … and an answer is not provided on the basis of such assertion … [t]he following information shall be provided in the objection … unless divulgence of such information would cause disclosure of the allegedly privileged information: For documents: (i) the type of document, e.g., letter or memorandum; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) the author of the document, the addressees of the document, and any other recipients, and, where not apparent, the relationship of the author, addressees, and recipients to each other.

[Local Rule 26.2(a)]; *see also In re Application of Chevron Corp.*, 736 F. Supp. 2d 773, 783 (S.D.N.Y. 2010) (applying Local Civil Rule 26.2).

Privilege logs are critical to the discovery process. Without them, the Court cannot "make an informed determination as to whether in fact the elements of the privilege have been made out," and the issuing party cannot "seek to overcome any such privilege, as is its right." *Chevron Corp.*, 736 F. Supp. 2d at 782. Privilege logs are important for other reasons, too:

> An invocation of a claim of privilege without producing an accompanying privilege log can be an unfair discovery tactic that increases delay in the resolution of lawsuits, fosters excessive motion practice, increases the costs of litigation, and greatly increases the work of the court. In addition, the very act of preparing a privilege log has a salutary effect on the discovery process by requiring the attorney claiming a privilege to actually think about the merits of assertion before it is made, and to decide whether such a claim is truly appropriate. Moreover, the requirement of a privilege log is intended to underscore the gravity, if not the solemnity, of an assertion that otherwise presumptively discoverable documents are exempt from discovery. The requirement that detail be provided operates to discourage pro forma, half-baked, dilatory, and even jocular assertions of privilege.

*Horace Mann Ins. Co. v. Nationwide Mut. Ins. Co.*, 240 F.R.D. 44, 47 (D. Conn. 2007).[4]

Because privilege logs are vital to the discovery process, the Federal Rules take the failure to produce them seriously. "A person claiming a privilege … who fails to provide adequate information about the privilege … to the party seeking the information is subject to an order to show cause why the person should not be held in contempt under subdivision (e)." Fed. R. Civ. P. 45, Advisory Committee Notes to 1991 Amendments.

Such a person is also "at risk of *waiving* the privilege." § 2464 Duties of Witnesses, 9A Fed. Prac. & Proc. Civ. § 2464 (3d ed.) (emphasis added). "Courts in [the Second] Circuit have … refused to uphold a claim of privilege in response to a subpoena when no privilege log has been produced in compliance with Federal Rule of Civil Procedure 45[e](2) and Local Rule 26.2." *OneBeacon Ins. Co. v. Forman Int'l, Ltd.*, No. 04 CIV. 2271 (RWS), 2006 WL 3771010, at *8 (S.D.N.Y. Dec. 15, 2006) (holding, in the context of the attorney-client and work product privilege, that the subpoenaed party "waived any privilege with respect to its withheld

---

[4] "Besides a *detail requirement*, there is a *timeliness* requirement associated with privilege logs. The Second Circuit has held that a party objecting to a subpoena for production and inspection must set forth all of its grounds for objection, including privilege grounds, within fourteen days of service of the subpoena." *Horace Mann*, 240 F.R.D. at 47 (citing *In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2d Cir.1998). As stated above, Mr. Parloff and Fortune did not produce their objections, which did not include a privilege log, until more than three weeks after the subpoena was issued.

documents by failing to properly identify them on a privilege log in compliance with Rule 45[e](2) … and Local Rule 26.2"). Courts in other circuits take the same view. *See, e.g.*, *In re Grand Jury Subpoena*, 274 F.3d 563, 575-76 (1st Cir. 2001) (a "party that fails to submit a privilege log" pursuant to Rule 45(e)(2) "is deemed to waive the underlying privilege claim").

Of particular relevance here, "an attorney's 'blanket statement' that all documents responsive to a subpoena are privileged"—precisely the statement counsel for Mr. Parloff and Fortune has made here—"is *entirely 'insufficient* to prove the essential elements of [the claimed privilege].'" *OneBeacon*, 2006 WL 3771010 at *7 (emphasis added) (quoting *In re Application for Subpoena to Kroll*, 224 F.R.D. 326, 328-29 (E.D.N.Y.2004) ("Rule 45 requires that the party claiming a privilege prepare a privilege log.... Failure to submit a privilege log may be deemed a waiver of the underlying privilege claim.")).

Nor is there a "persuasive reason why [a journalist]"—as opposed to any other person with a privilege—"should not be compelled to claim privilege with respect to documents and things in the same manner as any other litigant—*providing a privilege log* enumerating the documents as to which privilege is claimed and including as to each such information as may be necessary to make out his claim of qualified journalist privilege." *Chevron Corp.*, 736 F. Supp. 2d at 782. In other words, even for those asserting the journalist's privilege, the "wholesale refusal to produce a log and assertion of a blanket privilege [is] an unreasonable course of action." *Am. Sav. Bank, FSB v. UBS Painewebber, Inc.*, No. M8-85, 2002 WL 31833223, at *2 (S.D.N.Y. Dec. 16, 2002). And so, even for those asserting the journalist's privilege, "[t]he failure to [provide a privilege log] generally constitutes a waiver of any claim of privilege." *In re Application of Chevron Corp.*, 709 F. Supp. 2d 283, 306 n.40 (S.D.N.Y. 2010), *aff'd sub nom. Chevron Corp. v. Berlinger*, 629 F.3d 297 (2d Cir. 2011).

This interpretation of the law is followed outside the Second Circuit as well. A good example is *Mosely v. City of Chicago*, 252 F.R.D. 421 (N.D. Ill. 2008), *order vacated in part on reconsideration sub nom. on other grounds Mosley v. City of Chicago*, 252 F.R.D. 445 (N.D. Ill. 2008). Mosely spent five years fighting a murder case while being held in pretrial custody. After he was acquitted, he sued the City of Chicago and five police officers for violating his constitutional rights. To build his case, he subpoenaed a range of materials from a journalist who had published an article in Chicago Magazine about Mosely's extended stay in prison. *Id.* at 423. He also subpoenaed the magazine. *Id.* Both refused to provide the materials on the ground that they were protected by the journalist's privilege. And both "failed to even provide a privilege log, as required by Rule 45." *Id.* at 424.

After explaining that "Rule 45[e](2)(A)(ii) requires that a person withholding subpoenaed information under a claim of privilege *must*" provide a privilege log, *id.* at 426 (emphasis added), the court held that, "[b]y failing to comply … the Respondents have waived whatever claim of privilege they might have had in the [subpoenaed materials]." *Id.* at 426. "As indispensable as is the role of the press in a free society," the court concluded, "journalists and the media have 'no special immunity from the application of general laws.'" *Id.* (quoting *Branzburg v. Hayes*, 408 U.S. at 665, 683 (1972)).

The law on this matter is clear. Mr. Parloff and Fortune are entitled to object to the production of subpoenaed materials on the ground that those materials are protected by privilege. But they "cannot decide the limits of [their] own entitlement." Fed. R. Civ. P. 45, Advisory Committee Notes to 1991 Amendments. That's what courts are for. But the Court in this case cannot verify that each of the requested materials is in fact protected by the privilege if Mr. Parloff and Fortune refuse to produce a log identifying the responsive items they have withheld,

as Rule 45 requires. Yet they have refused all the same, claiming—in a blanket objection—that *all* the requested materials from *all* time periods covered by the subpoena are privileged. And they have refused to produce a privilege log, on the same theory.

This is precisely the sort of "pro forma, half-baked, dilatory, and even jocular assertion[] of privilege" that the Rules are meant to curb. *Horace Mann*, 240 F.R.D. at 47. In this case, the "very act of preparing a privilege log" would likely have "a salutary effect on the discovery process by requiring [counsel for Mr. Parloff and Fortune] to actually think about the merits of assertion before it is made, and to decide whether such a claim is truly appropriate" for each and every item requested. *Id.* Indeed, it seems overwhelmingly likely in this case that some of those items are *not* privileged. For instance, Mr. Parloff and Fortune claim that *all* the requested materials—including those obtained or produced *after* Mr. Parloff published his final Theranos article in 2015—are privileged because they are "editorial and reportorial work-product." Coopersmith Decl. ¶ 13, Ex. F (Objections). At a minimum, materials from after 2015 could not be editorial or reportorial, since, at that point, the reporting and editing was done. There are similar reasons to doubt that the privilege covers some of Mr. Parloff's "communications discussing Theranos," "communications with the government relating to Theranos," and other materials listed in the subpoena. Again, the very exercise of preparing a privilege log would likely lead counsel to realize that at least some documents are not covered.

Mr. Balwani has the "right" to "seek to overcome" any privilege covering the materials he has requested. *Chevron Corp.*, 736 F. Supp. 2d at 782. It is this right that Mr. Parloff and Fortune refuse to recognize. And by refusing, they "have waived whatever claim of privilege they might have had in" those materials in the first place. *Mosely*, 252 F.R.D. at 426.

### III.   CONCLUSION

For the reasons stated above, Mr. Balwani requests that the Court order Mr. Parloff and

Fortune to produce all materials called for by the subpoenas, or, at a bare minimum, to produce a log containing the materials for which they are claiming privilege.

Dated:   New York, New York
         November 1, 2019

Respectfully submitted,

Orrick, Herrington & Sutcliffe LLP

By: */s/ William J. Foley*
　　William J. Foley
　　Orrick, Herrington & Sutcliffe LLP
　　51 West 52nd Street
　　New York, NY 10019
　　212 506 5000
　　wfoley@orrick.com

　　Jeffrey B. Coopersmith (*pro hac vice forthcoming*)
　　Orrick, Herrington & Sutcliffe LLP
　　701 Fifth Avenue, Suite 5600
　　Seattle, WA  98104-7097
　　206 839 4300
　　jcoopersmith@orrick.com

　　Randall S. Luskey (*pro hac vice forthcoming*)
　　Orrick, Herrington & Sutcliffe LLP
　　405 Howard Street
　　San Francisco, CA 94105-2669
　　415 773 5700
　　rluskey@orrick.com

　　*Attorneys for Ramesh "Sunny" Balwani*